George Hofmann (10005)
Matthew M. Boley (8536)
Jeffrey Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300

Proposed attorneys for George Hofmann,
Chapter 7 Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| In re: | Bankruptcy No. 22-22239 (KRA) |
|---|---|
| SIMPLY MAC, INC., | Chapter 7 |
| Debtor. | |

**TRUSTEE'S MOTION FOR ORDER APPROVING AGREEMENT WITH APPLE, INC. TO FACILITATE THE RETURN OF CUSTOMER PROPERTY**

George Hofmann, in his capacity as Chapter 7 Trustee (the "Trustee") of Simply Mac, Inc. (the "Debtor"), hereby moves the Court (the "Motion") for entry of an order pursuant to Bankruptcy Code §§ 105(a), 541, 554, 704, and 725 authorizing the Trustee to enter into the agreement attached hereto as Exhibit A, with Apple, Inc. ("Apple") to facilitate the return of certain customer property held at the Debtor's retail locations. In support of this Motion, the Trustee states as follows:

{00622720.DOC /}

**BACKGROUND**

1. The Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on June 14, 2022 (the "Petition Date"), and George Hofmann was appointed as the Chapter 7 Trustee.

2. Also on the Petition Date, the Debtor's parent company, Simply Inc. (the "Parent Company"), filed its own voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court, thereby commencing the bankruptcy case styled *In re Simply, Inc.*, Bankr. No. 22-22242 (the "Related Bankruptcy Case").

3. The Trustee has just begun his investigation and administration of the Debtor's bankruptcy estate (the "Estate") and the estate of the Parent Company. The representations made herein may be modified or supplemented later in the course of the case as the Trustee's investigation proceeds.

4. Before the Petition Date, the Debtor was an Apple-authorized retail and service provider. The Debtor operated approximately 53 retail locations (collectively, the "Stores") throughout the United States at which, among other services, the Debtor provided repair services for various Apple products such as iPhones, iPads and Mac computers.

5. The Debtor closed the Stores on or about 12:01 a.m. on June 9, 2022. When it closed the Stores, the Debtor possessed a significant amount of Apple devices and related property that had been left by its customers for repairs and/or service (the "Customer Property"). Much, if not all, of the Customer Property is critical to the Debtor's customers' day-to-day lives, business operations, and human interaction, and those customers are understandably anxious to obtain the return of their property.

6. For example, within hours of the Trustee being appointed, the Trustee began receiving emails and phone calls from the Debtor's customers, inquiring about their respective devices that had been left with the Debtor for repairs. And the day after the Trustee's appointment, the Trustee was contacted by a Deputy Attorney General for the Office of the Tennessee Attorney General regarding the Debtor's failure to return Customer Property prior to the Petition Date and the Trustee's plan to address the return of Customer Property.

7. Immediately after the Petition Date, Apple informed the Trustee that it desired to assist the Debtor's customers with obtaining possession of the Customer Property. The Trustee understands that Apple maintains a detailed database of information regarding the Customer Property, and likely is in the best possible position to contact the Debtor's former customers and facilitate the return of Customer Property. Additionally, Apple has financial and human resources that the Trustee does not possess, which Apple can utilize to facilitate the return of Customer Property.

8. The Trustee desires to cooperate with, and obtain assistance from, Apple to facilitate the return of the Customer Property to its rightful owners.

9. Accordingly, the Trustee requests an order from the Court authorizing the Trustee to enter into the Agreement and approving the relief requested herein.

**RELIEF REQUESTED**

10. By this Motion, the Trustee asks the Court to: (i) authorize and approve the Agreement; (ii) approve the Trustee's abandonment under Bankruptcy Code § 554 of any interest of the Estate in the Customer Property; and (iii) authorize the Trustee's

disposal of the Customer Property under Bankruptcy Code § 725, consistent with the terms of the Agreement.

## DISCUSSION

11.     In general, bankruptcy courts will not second-guess a trustee's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (footnotes omitted). Of course, a trustee is also charged with duties of care and diligence and is obligated to be accountable for all property received.  See e.g., 11 U.S.C. § 704; Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989). When making a decision of significant consequence in a case, "best practice" is to "obtain court approval and give notice to the debtor of a proposed action" and to ensure that "[t]he trustee's disclosure to the court [is] candid." Bennett v. Williams, 892 F.2d at 823.

12.     The Trustee has no reason to believe that the Customer Property is property of the Estate. The Debtor did not have a "legal or equitable interest" in the Customer Property that was left with the Debtor for repairs or service, and which still sits behind the locked doors of the Stores. Nor does the Estate. Rather, the Trustee submits that Customer Property is owned by, and should immediately be returned to, the Debtor's customers.

13.     To the extent that the Debtor had an interest in Customer Property, such as an unpaid balance owed on a fully-repaired iPhone, the Trustee believes that it is in the best interests of the Estate to abandon such "property" as burdensome and of inconsequential value to the Estate, because the administrative costs of collecting these

{00622720.DOC /}                                             4

potential unpaid amounts likely would exceed the benefit of the collections. See 11 U.S.C. § 554. Additionally, the Trustee has no control over or access to the Stores to ensure that the Customer Property is safely kept, to collect payment of "unpaid balances," or otherwise to meaningfully facilitate the return of Customer Property.

14. Additionally, Bankruptcy Code § 725 provides that the Trustee, after notice and a hearing, "<u>shall</u> dispose of any property in which an entity other than the estate has an interest . . . and that has not been disposed of under another section of this title." (emphasis added).

15. Given that the Customer Property is not property of the Estate, or, to the extent that the Estate has an interest in Customer Property, such interest is of inconsequential value to the Estate, it is the Trustee's business judgment that the Agreement represents the most efficient, economic, and expedient way to return Customer Property to its rightful owners as required under Bankruptcy Code § 725. The Trustee submits that Apple's offer to use its significant resources (human and financial) will result in significant savings of time, energy, and money for the Trustee's administration of the Estate.

16. Apple has agreed to provide the following services under the Agreement, which should allow the Debtor's customers to quickly retrieve the Customer Property (collectively, the "Services"):

    a. accessing and securing each of the Debtor's retail locations, including changing the locks;

    b. accessing and securing each of the Debtor's retail locations, including changing the locks;

   c. solely for the limited purpose of identifying and returning Customer Property to Customers, accessing and using Debtor's property, including passwords, logins, phones, point of sales platform, computer systems, and any other necessary tools, equipment, or electronic systems;

   d. accessing customer information as necessary to identify the Customers and to identify which Customer Property belongs to, and should be returned to, specific Customers;

   e. securing and taking custody and possession of the Customer Property;

   f. documenting device status based on Debtor's records or Apple's own inspection;

   g. contacting the Customers as necessary to facilitate the return of the Customer Property to the appropriate Customers, or provide them updates on the status of such property;

   h. arranging to return possession of the Customer Property to the Customers; and

   i. any additional rights, duties and services which the Trustee and Apple mutually determine to be incidental, or reasonably necessary, to complete and accomplish the foregoing, or to allow Apple's affiliates, contractors or other persons to do the same.

  17. To the extent necessary, the Trustee has agreed to provide Apple with reasonable access to the Debtor's customer records to facilitate with the Agreement. The Trustee is not "selling" or "leasing" the Debtor's customer records, and as such,

submits that Bankruptcy Code § 363(b)(1)(A) and/or (B) does not apply to the Agreement.

18. To the extent Apple incurs out-of-pocket costs to pay a locksmith to change locks, and cannot first obtain reimbursement from another party after making a good faith attempt to do so, Apple may request reimbursement from the Debtor's bankruptcy estate by filing a request for payment of administrative expense in the Bankruptcy Case for the actual costs and expenses paid to a locksmith or other third party to change locks. Except for the foregoing, Apple has agreed that it will not seek or assert an administrative claim for the Services.

19. Apple is acting as an independent contractor under the Agreement, and the Estate does not, and shall not, assume any liability to Apple, the Debtor's customers, or any other person as it pertains to Apple's performance of the Services. To the extent that Apple has claims against the Estate, and to the extent that the Estate has claims against Apple, all such claims and any related rights, defenses, or remedies related thereto are reserved. Neither Apple nor the Trustee intend that the Agreement shall have any legal effect on any matter outside of the Services and related items set forth in the Agreement.

20. Because the Customer Property is imperative to the daily lives of the Debtor's customers, the Trustee will seek a hearing to approve the Motion on a final, expedited basis as quickly as possible. Solely to the extent that the Court deems necessary, the Trustee will seek the relief requested herein on a preliminary basis, with final relief to be requested as soon as possible thereafter.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order: (i) authorizing and approving the Agreement; (ii) approving the Trustee's abandonment under Bankruptcy Code § 554 of any interest of the Estate in the Customer Property; and (iii) authorizing the Trustee's disposal of the Customer Property under Bankruptcy Code § 725, consistent with the terms of the Agreement.

Dated:   June 16, 2022

**COHNE KINGHORN P.C.**

/s/ Jeffrey Trousdale
GEORGE HOFMANN
MATTHEW M. BOLEY
JEFFREY TROUSDALE
Proposed Attorneys for the Chapter 7 Trustee

# Exhibit "A"

## AGREEMENT
### (Cooperation to Return Customer Property)

This Agreement (this "Agreement") is entered into effective as of the 16th day of June, 2021 by and between GEORGE B. HOFMANN, TRUSTEE (the "Trustee") of the chapter 7 bankruptcy estate of Simply Mac, Inc. (the "Debtor") and APPLE INC. ("Apple"). The Trustee and Apple are sometimes hereafter jointly referred to as the "Parties" and individually as a "Party".

### RECITALS

A.    The Debtor is, or was, an Apple-authorized retail and service provider. The Debtor formerly operated approximately 53 retail locations throughout the United States at which, among other services, the Debtor provided repair services for various Apple products such as iPhone, iPads and Mac computers.

B.    When the Debtor closed its doors on or about June 9, 2022, it was in possession of Apple devices and related property (the "Customer Property") belonging to its customers (the "Customers") that were in various stages of repair.

C.    Apple desires to obtain possession of the Customer Property in order to facilitate the return of said property to Customers.

D.    On June 14, 2022 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), thereby commencing the bankruptcy case styled *In re Simply Mac, Inc.*, Banrk. No. 22-22239 (the "Bankruptcy Case").

E.    Also on the Petition Date, the Debtor's parent company, Simply Inc. ("Parent Company"), filed its own voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Bankruptcy Court, thereby commencing the bankruptcy case styled *In re Mac, Inc.*, Banrk. No. 22-22242 (the "Related Bankruptcy Case").

F.    The Trustee has been appointed as trustee for each of the Debtor and Parent Company, and their respective bankruptcy estates.

G.    The Trustee and Apple desire to cooperate to secure the Customer Property, to identify the Customer Property and to return the Customer Property to the appropriate Customers.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1.    **Approval by the Bankruptcy Court.**    This Agreement is subject to notice to creditors and parties-in-interest in the Bankruptcy Case and approval by the Bankruptcy Court. Upon the complete execution of this Agreement, the Trustee will prepare, file, and notice for hearing a motion for approval of this Agreement. The Trustee agrees to use its best efforts to

secure entry of an order of the Bankruptcy Court in the Case approving this Agreement on a preliminary and/or on a final basis (the "Approval Order"). This Agreement shall be binding upon the Parties as of the date when each of the Parties has executed this Agreement, but the obligations of the Parties hereunder are subject to and contingent upon the entry of the Approval Order.

2. **Appointment of Apple as Service Provider.** The Trustee hereby appoints and retains Apple to provide the Services pursuant to the terms and conditions of this Agreement, and Apple hereby accepts such appointment and agrees to provide the Services pursuant to the terms and conditions of this Agreement. As soon as practicable, the Trustee shall file a motion seeking an order of the Bankruptcy Court authorizing and approving this Agreement on a preliminary and/or final basis.

3. **Services.** Apple shall have the following rights, and may, at its sole discretion, provide the following services (collectively, the "Services"):

   3.1. accessing and securing each of the Debtor's retail locations, including changing the locks;

   3.2. solely for the limited purpose of identifying and returning Customer Property to Customers, accessing and using Debtor's property, including passwords, logins, phones, point of sales platform, computer systems, and any other necessary tools, equipment, or electronic systems;

   3.3. accessing customer information as necessary to identify the Customers and to identify which Customer Property belongs to, and should be returned to, specific Customers;

   3.4. securing and taking custody and possession of the Customer Property;

   3.5. documenting device status based on Debtor's records or Apple's own inspection;

   3.6. contacting the Customers as necessary to facilitate the return of the Customer Property to the appropriate Customers, or provide them updates on the status of such property;

   3.7. arranging to return possession of the Customer Property to the Customers; and

   3.8. any additional rights, duties and services which the Trustee and Apple mutually determine to be incidental, or reasonably necessary, to complete and accomplish the foregoing, or to allow Apple's affiliates, contractors or other persons to do the same.

4. **Cooperation.** The Parties shall cooperate and use good faith and commercially reasonable efforts to obtain any consents, additional licenses or approvals from third parties that are required to enable Apple to perform the Services; provided that neither Party will have liability

to the other Party for any Services provided by Apple under this agreement. Without limitation, Apple will not seek or assert an administrative claim for the Services except only as provided in section 5, below.

5. **Reimbursement of Expenses.** Apple may be required to change the locks at the Debtor's retail locations in order to access and secure those locations. To the extent Apple incurs out-of-pocket costs to pay a locksmith to change locks, and cannot first obtain reimbursement from another party after making a good faith attempt to do so, Apple may request reimbursement from the Debtor's bankruptcy estate by filing a request for payment of administrative expense in the Bankruptcy Case for the actual costs and expenses paid to a locksmith or other third party to change locks.

6. **Use of Affiliates and other Contractors.** Apple may use its affiliates, contractors or other persons to perform all or any part of a Service hereunder. Apple will remain fully responsible for the performance of its obligations under this Agreement in accordance with its terms, including any obligations it performs through affiliates, contractors or other persons, and Apple will be solely responsible for payments due any such affiliates, contractors or other persons.

7. **Independent Contractor Relationship.** With respect to its performance of the Services, Apple is an independent contractor, with the authority to control, oversee and direct the performance of the details of the Services, subject to the right of the Trustee to direct Apple with respect to the ends to be accomplished.

8. **No Joint Venture or Partnership.** This Agreement is not intended, and shall not be construed, to create a joint venture, partnership, agency or other association within the meaning of the common law, the Bankruptcy Code or under the laws of any state.

9. **Records.** Apple will keep reasonably detailed records in performance and completion of the Services, and, upon reasonable request, will provide copies of such records to the Trustee.

10. **Binding Effect; Entire Agreement; Amendment.** Subject to entry of the Approval Order, this Agreement is binding upon and shall inure to the benefit of the Parties and their respective heirs, successors, assigns, officers, directors, employees, agents, representatives, subrogees and to all persons or entities claiming by, through or under them. This Agreement represents the entire understanding between the Parties with respect to the subject matter herein, and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof. There are no written or oral agreements between them which are not set forth herein. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement. Neither this Agreement nor any provisions hereof may be changed, discharged or terminated orally, and may be modified or amended only by an instrument in writing, signed by all Parties. Likewise, the rights of and available to each of the Parties under this Agreement cannot be waived or released orally, and may be waived or released only by an instrument in writing, signed by the Party whose rights will be diminished or adversely affected by the waiver.

{00622673.DOCX / 5}                                3

11.     **Governing Law.**  This Agreement, and the rights and obligations of the Parties hereunder, shall be construed in accordance with and governed by (a) to the extent applicable, federal bankruptcy law, and (b) in all areas not governed by federal bankruptcy law, by the laws of the State of Utah.

12.     **Retention of Jurisdiction.**   The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

13.     **Authorization.**  The persons executing this Agreement on behalf of a Party hereby represent and warrant that they are duly authorized and empowered to execute the same, that they have carefully read this Agreement, and that (subject to satisfaction of the Contingencies) this Agreement represents a binding and enforceable obligation of such Party.

14.     **Counterparts; Electronically Transmitted Signatures.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one and the same Agreement.  Signatures transmitted by electronic means, including via facsimile and/or e-mail, shall have the same force and effect as original signatures.

15.     **Reservations of Rights.** The Parties reserve all rights with respect to any matters not covered by this Agreement, including whether certain property located in the Debtor's retain locations and/or in the possession of the Debtor's bankruptcy estate may be Apple's property, Apple's claims for any amounts allegedly owed to Apple as of the Petition Date, any amounts allegedly owed by Apple to the Debtor, and any related claims.

IN WITNESS WHEREOF, each of the Parties has executed this Agreement as of the date first above written.

**APPLE, INC.**

By _____
Print Name: Amy Vallely
Print Title: Director, AC Service Channel Mgmt

**GEORGE B. HOFMANN, TRUSTEE**

By _____
  George B. Hofmann
Print Name:
Print Title: