George Hofmann (10005)
Matthew M. Boley (8536)
Jeffrey Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300

Attorneys for George Hofmann,
Chapter 7 Trustee

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| In re | Bankruptcy No.  22-22239 (KRA) |
|---|---|
| SIMPLY MAC, INC., | Chapter 7 |
| Debtor. | |

## TRUSTEE'S MOTION FOR ORDER APPROVING THE ASSIGNMENT AGREEMENT BETWEEN THE TRUSTEE AND CLEARWATER RECOVERY AND RELATED SALE OF RIGHTS IN A POTENTIAL LITIGATION SETTLEMENT

George Hofmann (the "Trustee"), in his capacity as the Chapter 7 trustee of the bankruptcy estate of Simply Mac, Inc. (the "Debtor"), through his undersigned counsel, moves this Court for an Order approving an assignment agreement between the Trustee and Clearwater Recovery Partners LLP ("Clearwater Recovery"), and in support of the motion, respectfully states as follows:

## BACKGROUND

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The Debtor commenced this case under Chapter 7 of the Bankruptcy Code by filing a voluntary petition on June 14, 2022 (the "Petition Date") and the Trustee was duly appointed as Chapter 7 Trustee of the Debtor's estate.

3.       Prior to the Petition Date, the Trustee understands that the Debtor is a party to, and may, as a purported member of a Rule 23(b) plaintiff class, be a potential beneficiary of certain claims and causes of action described in the putative and consolidated class action brought against Visa, Inc., MasterCard, Inc. and certain other defendants (collectively the "Defendants") entitled *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Case No. 05-MD-1720 (MKB)(JO)) (the "Litigation") that is currently pending in the United States District Court for the Eastern District of New York (the "District Court").

4.       The Litigation is comprised of many actions – some class actions and some individual lawsuits – that were consolidated into a multi-district litigation in 2005. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 220 n.12 (E.D.N.Y. 2013).

5.       The Debtor may have rights, now or in the future to claims arising from or relating to the Litigation or any related litigation, prosecution or settlement of the Debtor's claims against the Defendants as described in the Litigation and the injuries alleged therein (the "Claim").

6.       The Litigation (and all related appeals, interjections, objections, etc.) lasted roughly fifteen years. While the District Court has approved the class settlement agreement the timeline for payment to entitled plaintiffs is murky, at best. As of August of 2023, there have been no updates regarding the administration of the claims process.

7.      Clearwater Recovery is in the business of purchasing speculative and illiquid assets and obligations in exchange for cash. Clearwater Recover has no other preexisting business relationship or other interest in the Debtor or the Debtor's estate.

8.      Subject to the approval of this Court, Clearwater Recovery desires to purchase from the Debtor all of the Debtor's right, title and interest arising from and/or relating to the Claim and the Trustee desires to sell all of Debtor's right, title and interest arising from and/or relating to the Claim.

9.      The Trustee and Clearwater Recovery have engaged in good-faith, arms-length negotiations regarding the preparation and execution of the Agreement and as to the sale of all rights, titles and interest in the Claim.

## RELIEF REQUESTED

10.     By this Motion, the Trustee respectfully requests that the Court approve the Agreement, a copy of which is attached hereto as <u>Exhibit A</u>, and the sale and transfer of rights, title and interest arising from the Claim, as contemplated by the Agreement.

## THE AGREEMENT

11.     The Agreement is summarized in this Motion, but to the extent of any inconsistency between this summary and the Agreement, the Agreement itself controls. Accordingly, creditors and parties-in-interest are directed to the Agreement itself for its complete terms.

12.     Under the Agreement, the Trustee has agreed to sell, transfer and assign to Clearwater Recover all of the Debtor's right, title and interest arising from and/or relating to the Claim and to the extent related thereto: (i) all trade data, transaction data,

invoices, purchase orders, sale orders, proofs of delivery, agreements, instruments, notices, statements, confirmations, correspondence and other documents and data that evidence, create, give rise to or otherwise relate to, refer to or affect the Claim; (ii) all rights to receive damages, penalties, fees, expenses, principal, interest and other amounts in respect of, or otherwise in connection with, the Claim; and (iii) all other claims, causes of action, choses in action, and rights against the Defendants in the Litigation, their respective affiliates, and any guarantor or other third party relating to or arising from the Claim, together with voting and other rights and benefits arising from, under or relating to any of the foregoing, including, without limitation, all of Debtor's rights to receive cash, securities, instruments and/or other property or distributions issued in respect of the Claim, or otherwise, or issued in connection with any of the foregoing (the "Transferred Rights").

13.     Clearwater Recovery acknowledges that all Transferred Rights are being transferred on an "as is," "where is," and "with all faults" basis. In exchange for the Trustee's transfer of the Transferred Rights, Clearwater Recovery has agreed to pay to the Trustee the total amount of five thousand dollars ($5,000.00) and has agreed to incur any and all other costs with the enforcement and exercise of their rights under the Claim and the Transferred Rights.

14.     The Agreement, by its terms, is subject to Court approval.

**DISCUSSION**

I.    **The Court Should Approve the Sale**

To facilitate the administration of the bankruptcy estate, 11 USC § 363(b)(1) provides that the Trustee, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…"

Section 363(b) has been applied in many situations to authorize a bankruptcy trustee to sell and otherwise use property of the estate outside of the ordinary course of business including entering into transactions requiring expenditure of estate assets. See 3 Collier on Bankruptcy ¶ 327.02[6][a] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

To approve the use or sale of property outside of the ordinary course of business, the Trustee must show four requirements:  "(1) that a sound business reason exists for the sale; (2) there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith."  In re Medical Software Solutions, 286 B.R. 431 (Bankr. D. Utah 2002); accord Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (identifying the "sound business purpose" test); In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of Lionel and adding the "good faith" requirement).

In general, bankruptcy courts often defer to a trustee's business judgment regarding the sale of estate assets, unless such decision is arbitrary and capricious. See In re Curlew Valley Assocs., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981).  Courts

generally will not second-guess a trustee's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code."  <u>Curlew Valley</u>, 14 B.R., at 513-14 (footnotes omitted).

The Trustee has sound business reasons for entering into the proposed Agreement and the sale of the Transferred Rights. This is a Chapter 7 liquidation case, and the Trustee has a duty to "collect and reduce to money the property of the estate." Bankruptcy Code § 704(a)(1).

As to the second factor, the Trustee submits that this Motion provides ample notice to parties in interest of the proposed transaction. The terms of the Agreement have been fully disclosed.

The Trustee believes that the proposed amount to be paid under the Agreement are fair and reasonable for several reasons, including that:

- It is unclear if the Debtor is entitled to a settlement payment related to the Litigation

- If the Debtor is entitled to a settlement payment related to the Litigation, the amount of such payment is yet undetermined

- Even if the Debtor *is* entitled to a settlement payment, there is no concrete or predictable timing as to when or whether claims for settlement payments will begin to be administered by the Defendants

- The right to a potential settlement payment is of little value to anyone other than the holder of the right to make claims under for settlement payments whereas liquid assets would be of greater value to the creditors and the Debtor's estate

- The added cost to the Debtor's estate to continually monitor the Settlement Website (as defined below) negates or, at least, decreases the value of a potential settlement payment

- Clearwater Recovery has agreed to purchase the Transferred Rights free of any kind of representation, warranty or other assurance of any kind

- Given all of these factors, the purchase price is fair and reasonable in the Trustee's opinion

Moreover, the Trustee submits that the Agreement satisfies the good faith requirement set out in the Medical Software Solutions case. See 286 B.R. at 241. The Bankruptcy Code does not define "good faith." Courts have therefore turned to the traditional equitable definition of a "good faith purchaser"—a purchaser who buys in "good faith" and for "value." Tomkins v. Frey (In re Bel Air Assocs., Ltd.), 706 F.2d 301, 305 (10th Cir. 1983). In addition, certain types of misconduct, including "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take advantage of other bidders,'" will "destroy a buyer's 'good faith purchaser' status." Id. (quoting In re Rock Indus. Machinery Corp., 573 F.2d 1195, 1197 (7th Cir. 1197). Although Tomkins was a case arising under the Bankruptcy Act, it remains good law in this circuit. See Plotner v. AT&T Corp., 224 F.3d 1161, 1171 (10th Cir. 2000) (citing Tomkins with approval).

The identity and affiliates of Clearwater Recovery have been fully disclosed. See id. at 445-446 (finding that debtor acted in good faith where the debtor "disclosed all elements of the transaction, including the insider status of the proposed purchaser").

The Trustee does not believe that Clearwater Recovery has engaged in any conduct that would preclude this Court from making a "good faith" finding at the hearing to approve this proposed sale. The Court, therefore, should conclude that the Agreement meets each of the four <u>Medical Software Solutions</u> requirements.

## II.   Alternatively, the Trustee has Properly Exercised His Business Judgment in Entering into the Agreement

Given that the Agreement is for the sale of causes of action, the Court may alternatively consider approval of the Agreement as a settlement under the Fed. R. Bankr. P. 9017. In considering a proposed settlement, this Court applies the factors stated in <u>In re Kopexa Realty Venture Co.</u>, 213 B.R. 1020 (B.A.P. 10th Cir. 1997). These factors are: (1) the probable success of the underlying litigation on the merits; (2) the possible difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views.  <u>Id.</u> At 1022.  These factors weigh in favor of approving the Agreement.

**<u>Odds of Success</u>:**  As explained above, the Debtor is purported to be a member of a Rule 23(b) plaintiff class in the Litigation. The Trustee has reviewed docket and litigation history, and the District Court has approved the settlement agreement between the Rule 23(b) plaintiff class and the various Defendants. Assuming that the Debtor has not previously opted out or been dismissed as a plaintiff, then success in the Litigation appears to be a given. However, the Trustee makes no representations about whether the Debtor, prior to the initiation of the Chapter 7 proceedings, had opted out of their position as a Rule 23(b) plaintiff.

**Collectability:** Collectability of any judgment is another factor that weighs in favor of approving the Agreement. As noted above, while a settlement agreement has been approved, the timeline for parties to begin receiving payment from the settlement agreement is not at all clear. The Defendants have created an official court-authorized settlement website (*see* https://www.paymentcardsettlement.com/en, the "Settlement Website") but as of August 2023, the Defendants have not provided any updates on the manner or timing of the administration of the claims process. As noted above, it is also unclear to the Trustee as to whether the Debtor had, at some point in the course of the litigation, opted out of the settlement agreement. There is no indication as how much the settlement amount in favor of the Debtor may be, if any.

**Complexity and Expense:** In the Trustee's view, the complexity and expense of the litigation is the most important factor to consider in determining the propriety of approving the Agreement. While the litigation itself has effectively concluded, the relatively small amount of the settlement that Debtor may be entitled to receive is outweighed by the time and costs associated with monitoring the Settlement Website for updates and submitting a claim. Again, it is also unclear whether the Debtor is entitled to a settlement or how much such a settlement may be.

**Interests of Creditors:** The interests of creditors also weigh heavily in favor of the Agreement.  The Trustee believes that it is in the best interest of the Creditors and to have added liquidity in the form of the cash payment from Clearwater Recovery for the sale of the Transferred Rights than a right to a potential settlement that may or may not happen any time soon.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter an order

approving the Agreement and the sale of the Transferred Rights pursuant to the

Agreement, and granting the Trustee such other and further relief as the Court deems

just and proper.

Dated:  October 27, 2023

COHNE KINGHORN, PC

/s/ Matthew M. Boley
GEORGE B. HOFMANN
MATTHEW M. BOLEY
JEFFREY TROUSDALE
Attorneys for Trustee

# EXHIBIT "A"

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (the "<u>Agreement</u>") is entered into on 13 October 2023 (the "<u>Agreement Date</u>"), by and between Simply Mac, Inc. & Simply, Inc., in Chapter 7 Bankruptcy represented by trustee George B. Hofmann, with IRS Tax Identification Numbers 20-5434047 & 33-0599368 (collectively the "<u>Seller</u>") and Clearwater Recovery Partners LLP ("<u>Buyer</u>"). Seller and Buyer may sometimes be referred to individually as a "<u>Party</u>" and collectively as the "<u>Parties</u>."

## RECITALS

WHEREAS, Seller has accepted payments for goods and services from customers who effect payment through the Visa and/or MasterCard payment processing networks and, in connection therewith, may be a potential beneficiary of certain claims and causes of action related to the processing of such payments, associated fees charged by Visa and MasterCard (the "<u>Interchange Fees</u>"), network rules and other factors, including but not limited to the claims and causes of action described in the putative consolidated class action brought against Visa, Inc., MasterCard, Inc. and certain other Defendants (as defined in the Litigation (as defined below)) (collectively, the "<u>Defendants</u>") entitled *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Case No. 05-MD-1720 (MKB)(JO)) (the "<u>Litigation</u>") pending in the United States District Court for the Eastern District of New York ("<u>District Court</u>");

WHEREAS, Seller may have rights, now or in the future, to claims arising from and/or relating to the Interchange Fees, the Litigation or any related litigation, prosecution or settlement (whether pursuant to the potential settlement contemplated by that certain Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants filed in the Litigation on September 18, 2018 (as amended, modified or supplemented as of the Agreement Date, the "<u>Settlement Agreement</u>") or any and all such potential settlement funds, trusts or similar structures established by the Defendants) of Seller's claims and causes of action described in the Litigation and the injuries alleged therein, whether such conduct took place during the class period alleged or sought to be established in the Litigation (which class period currently relates to the time period between January 1, 2004 and January 25, 2019 (the "<u>Current Class Period</u>") pursuant to the Settlement) or otherwise (such rights arising from or related to the operative facts, causes of action and/or types of claims for relief within the applicable time period alleged in the Litigation, including all rights, title, and ownership interest of any kind, now existing or arising hereafter, to which Seller may be entitled, arising in any way or form, from the claims and causes of action underlying the Litigation, and any rights in regard to any successor or related litigation that may be filed subsequently based on the facts underlying the Litigation, any related or alternative litigation that may be filed subsequently based on the facts underlying the Litigation are, individually and collectively, referred to herein as the "<u>Claim</u>"); and

WHEREAS, Buyer desires to purchase from Seller all of Seller's right, title and interest arising from and/or relating to the Claim, and Seller desires to sell to Buyer all of Seller's right, title and interest arising from and/or relating to the Claim as provided for in this Agreement (the "<u>Transaction</u>").

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## TERMS AND CONDITIONS

1.     **Sale and Purchase of Transferred Rights**.  For good and valuable consideration, effective upon approval of the Bankruptcy Court, Seller hereby irrevocably sells, conveys, transfers and assigns to Buyer, its successors and assigns, all of Seller's right, title and interest arising from and/or relating to the Claim and to the extent related thereto: (i) all trade data, transaction data, invoices, purchase orders, sale orders, proofs of delivery, agreements, instruments, notices, statements, confirmations, correspondence and other documents and data that evidence, create, give rise to or otherwise relate to, refer to or affect the Claim (collectively, "<u>Transaction Data</u>"); (ii) all rights to receive damages, penalties, fees, expenses, principal, interest and other amounts in respect of, or otherwise in connection with, the Claim (whether pursuant to the Settlement Agreement or otherwise); and (iii) all other claims, causes of action, choses in action, and rights against the Defendants in the Litigation, their respective affiliates, and any guarantor or other third party relating to or arising from the Claim, together with voting and other rights and benefits arising from, under or relating to any of the foregoing, including, without limitation, all Seller's rights to receive cash, securities, instruments and/or other property or distributions issued in respect of the Claim, or otherwise, or issued in connection with any of the foregoing (collectively, the "<u>Transferred Rights</u>"). This assignment shall be an absolute and unconditional assignment, is a true sale of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest.  Buyer is not assuming any obligation or liability of Seller in respect of the Litigation, the Claim or the Transferred Rights.  Buyer agrees that it will not (without Seller's prior written consent and at Buyer's sole cost and expense), and acknowledges that it has no (and by virtue of this Agreement will not obtain) authority to, commence any action that would require Seller to litigate or participate in any litigation, arbitration, mediation, or other adversarial proceeding arising from and/or relating to the Interchange Fees, the

Litigation or the Claim. Should all or any portion of the Transferred Rights not be assignable by Seller to Buyer, then Seller automatically grants to Buyer a one hundred percent (100%) participation interest in all or such portion of the Transferred Rights, in accordance with applicable law, reflecting the transfer to Buyer of a one hundred percent (100%) beneficial interest in all or such portion of the Transferred Rights, including without limitation, voting rights and the full economic benefit and disposition rights with respect to all or such portion of the Transferred Rights. No later than two (2) business days after the satisfaction of the conditions set forth in Section 2(a), Buyer shall pay to Seller an amount equal to five thousand Dollars ($5,000) (the "Purchase Price") in immediately available funds by confirmed wire transfer to Seller's bank account set forth on Schedule A hereto. The date upon which the Purchase Price is paid by Buyer to Seller shall be referred to herein as the "Closing Date."

2.    **Conditions Precedent to Closing**. Buyer's obligation to pay the Purchase Price to Seller is subject to the Buyer shall have received a duly executed copy of this Agreement and a Limited Authorization to Obtain Transactional Data, in the form attached hereto as Exhibit A and Notice of Transfer of Assignment of Rights, in the form attached hereto as Exhibit B, each signed by Seller.

3.    **"As Is, Where Is"**. Buyer acknowledges that the Claim is being transferred on an "as is," "where is," and "with all faults" basis.

4.    **Limited Power of Attorney; Further Assurances**. Seller hereby irrevocably appoints Buyer as its true and lawful attorney in fact and authorizes Buyer to act in Seller's name, place and stead, or otherwise, to demand, sue for, compromise and recover all such sums of money that now are or that hereafter might become due and payable for or on account of the Claim or any other Transferred Rights, and grants to Buyer full authority to do all things necessary to enforce the Claim and all other Transferred Rights, including, but not limited to: (a) file or submit, for Buyer's exclusive benefit, any claim form or similar document with respect to the Transferred Rights; (b) receive distributions or other payments in connection with the Transferred Rights; (c) endorse and deposit into Buyer's account any check or other instrument that may be issued in connection with the Transferred Rights; and (d) agree to less favorable treatment or a lower notional amount for the Claim than other similarly situated claimants. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer and Buyer shall have no obligation to take any action to prove, defend, demand or take any action with respect to the validity or amount of the Claim or otherwise in the Litigation. Seller agrees to (at Buyer's reasonable request and expense) (i) execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be reasonably necessary or appropriate to (a) effect the assignment of the Transferred Rights and all interests therein to Buyer and have Buyer recognized by Epiq Class Action & Mass Tort Solutions ("Epiq") as owner of the Transferred Rights, (b) use commercially reasonable efforts (at no cost to Seller) to assist Buyer to enforce and collect on the Transferred Rights and (c) otherwise effectuate the intent of this Agreement and (ii) promptly forward to Buyer all notices, documents or other information received from the District Court, Epiq, or any other third party with respect to the Transferred Rights. Seller further agrees that if and to the extent that Seller has preregistered information with an Epiq, it will update its submission to provide for the transfer of the Claim and the other Transferred Rights to Buyer including, but not limited to, listing Buyer's name, address, phone number and email address as the contact information with respect to the Claim and the other Transferred Rights. Without limiting the generality of the foregoing, if and to the extent that Epiq or any other claims administrator, counsel for any party in the Litigation, any court of competent jurisdiction, or persons or entities acting in similar respective capacities in any alternative action to the Litigation, do not recognize Buyer as having the requisite standing or authority to file the Claim, in Seller's name or otherwise, then Seller agrees to file the Claim on Buyer's behalf upon written request (and at the sole expense) of Buyer. Seller agrees that it will not take any action with respect to the Litigation or Transferred Rights, including filing any objection relating to the Claim or Litigation, without the Buyer's prior, written consent.

5.    **Distributions**. Seller agrees that in the event Seller receives any payments, recoveries, proceeds, disbursements or distributions with respect to or relating to the Claim or any other Transferred Rights, whether in the form of cash, securities, instruments or other property, Seller will accept the same as Buyer's agent and will hold the same in trust for and on behalf of and for the sole benefit of Buyer, and, at Seller's expense, promptly deliver the same forthwith to Buyer in the same form received (free of any withholding, set-off, claim or deduction of any kind), together with any endorsements or documents necessary to transfer such distributions or payments to the Buyer, within three (3) business days in accordance with Buyer's written instructions.

6.      **Notices**.  Any and all communications between the Parties or notices or other information sent in connection with the Transaction must be in writing and sent by hand delivery, overnight courier, facsimile, or electronic mail *via* the relevant Party contact details listed on the attached Schedule A.  All such communications and notices will be (and will deemed to be) effective upon receipt.

7.      **Survival and Transferability**.  All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and the purchase and sale of the Transferred Rights and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and Buyer's successors and assigns, and Seller agrees that Buyer may sell, transfer or assign the Transferred Rights, in whole or in part, together with all or any portion of the right, title and interest of Buyer in and to this Agreement, and may transfer or assign its rights and obligations pursuant to this Agreement, in whole or in part, without the consent of Seller but after thirty (30) days' written notice to the Seller.

8.      **Confidentiality**.  The Parties agree to maintain the confidentiality of the terms of this Agreement, except that the Parties may disclose the terms of this Agreement: (a) to their respective affiliates, and the directors, officers, employees, agents, advisors, counsel and auditors of such parties and such parties' affiliates, (b) in connection with the enforcement of the Parties' respective rights and obligations hereunder, (c) to any banking, regulatory or examining authority, (d) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other entity, and (e) where the disclosure is required by any law, rule or regulation or other legal process; provided, however, that if any such disclosure is required by the Bankruptcy Court, the disclosing Party shall give the nondisclosing Parties prior notice of, and an opportunity to comment on, the proposed disclosure; provided, further, that Buyer may disclose the Transaction (except for the Purchase Price) to any funding sources, capital partners or investors, or any proposed or actual transferee, assignee, participant, or other entity proposing to enter into contractual relations with Buyer in respect of all or a portion of the Transferred Rights.

9.      **Governing Law; Venue and Waiver of Jury Trial**.  This Agreement shall be governed by, and construed in accordance with, the substantive laws of the State of Utah without regard to the conflict of law rules thereof.  In any action commenced hereunder to enforce one or more provisions of this Agreement, the Parties agree: (a) that venue shall be exclusive to the Bankruptcy Court; (b) to waive the defenses of improper venue and *forum non conveniens*; (c) to waive the right to a trial by jury in any action or proceeding arising out of this Agreement; and (d) to consent to entry of final rulings, orders and judgments by the Bankruptcy Court.

10.      **Miscellaneous**.

a.      Wherever appropriate throughout this Agreement, the singular shall include the plural, the plural shall include the singular, and the masculine shall include the feminine.

b.      This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.

c.      This Agreement constitutes the entire agreement between the Parties and supersedes any prior understandings or agreements, written or verbal, between them regarding the subject matter contained herein.  This Agreement may be amended, supplemented, modified, or discharged only upon an agreement in writing executed by all of the Parties.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

d.      The Parties agree to bear their own respective costs and expenses for preparing, negotiating, executing and delivering this Agreement and any related documents and consummating the Transaction and neither Party will be responsible for any fee, commission or compensation to any person engaged or retained the other Party to act as a finder, broker, agent or other intermediary in connection with the Transaction.

e.      All exhibits and schedules referenced herein shall constitute an integral part of this Agreement.

*[Signature to follow on next page]*

**IN WITNESS WHEREOF,** this Assignment Agreement has been executed by the Parties as of the date and year provided above.

**SELLER**

By: _____

        Name: George Hofmann
        Title: Trustee

**BUYER**

By: _____

        Name:  Joshua Tucker
        Title:   Partner

- 4 -

**<u>Schedule A</u>**

Purchase Price (payable by Buyer to Seller):     $5,000

**<u>Seller's Address for Notices and Delivery</u>**:

Cohne Kinghorn, PC
111 East Broadway, 11th Floor
Salt Lake City, UT 84111

Attention: George Hofmann
Email: ghofmann@ck.law

---

**<u>Buyer's Address for Notices and Delivery</u>**:

Clearwater Recovery Partners LLP
1 Gateway Center, Suite #2600
Newark, NJ, 07102
United States

Attention:  Joshua Tucker
Email:     ops@clearwaterllp.com

---

**EXHIBIT A**

**Limited Authorization to Obtain Transactional Data**

[attached]

## LIMITED AUTHORIZATION TO OBTAIN TRANSACTIONAL DATA

THIS AGREEMENT (the "Agreement") is entered into on 13 October 2023 (the "Agreement Date"), by and between Simply Mac, Inc. & Simply, Inc., in Chapter 7 Bankruptcy represented by trustee George B. Hofmann, with IRS Tax Identification Numbers 20-5434047 & 33-0599368 (collectively the "Seller") and Clearwater Recovery Partners LLP ("Buyer")

Seller has assigned to Buyer certain rights to any recovery arising from that certain putative consolidated class action entitled *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Case No. 05-MD-1720 (MKB)(JO)) pending in the United States District Court for the Eastern District of New York (the "Claim"). The Claim relates to credit card and debit card transactions occurring at any time since January 1, 2004.

As used in this Authorization, (a) the term "Transactional Data" means data from or related to credit card or debit card transactions in which Seller received payment for goods sold or services provided, to the extent and in such scope as directly relevant to the Claim; and (b) the term "Processors" means Seller's acquiring banks, credit card processors, any other entity involved in processing or recording credit card or debit card transactions, and any third party holding or possessing any or all of Seller's Transactional Data, to the extent and in such scope as directly relevant to the Claim.

Seller hereby directs and authorizes all Processors to release and provide to Buyer any and all Transactional Data to the extent and in such scope as directly relevant to the Claim. Seller hereby authorizes Buyer to request, demand, obtain and receive from any source all of Seller's Transactional Data.

The undersigned have executed this Authorization as of the date set forth above.


**SELLER**


By: _____

Name: George Hofmann
Title: Trustee


**BUYER**


By: _____

Name:  Joshua Tucker
Title:   Partner

**EXHIBIT B**

**Notice of Transfer and Assignment of Rights and Acknowledgment of Receipt**


[attached]

## NOTICE OF TRANSFER AND ASSIGNMENT OF RIGHTS

To:    Claims Administrator of Settlement Arising from *In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation*, Case Number 1:05-md-01720-JG-JO, pending before the Eastern District of New York (the "Litigation")

We hereby give notice that pursuant to that certain Assignment Agreement ("Assignment Agreement"), executed by and between Simply Mac, Inc. & Simply, Inc., in Chapter 7 Bankruptcy represented by trustee George B. Hofmann, with IRS Tax Identification Numbers 20-5434047 & 33-0599368 (collectively the "Seller") and Clearwater Recovery Partners LLP ("Buyer"), Seller has absolutely and unconditionally transferred and assigned to Buyer all of Seller's economic rights, title, and interest in and to, or associated with, or connected in any manner to, any claim in, or recovery or settlement against and settlement arising from the Litigation.

The rights assigned to Buyer include, but are not limited to, Seller's right to (1) file, amend or compromise a claim in the Litigation; (2) challenge any and all estimates for payment of that claim; (3) communicate with, and receive communications and notices from, third-parties, including the claims administrator; and (4) receive any recovery or settlement paid in connection with the Litigation.  Seller has provided Buyer with merchant identification information listed on the attached Schedule 1.

Buyer is now the legal and equitable owner of all economic rights associated with the Litigation.  As such, you should deal directly with Buyer or its duly appointed agents on all matters pertaining to Seller's rights in the Litigation.  Further, in accordance with the Assignment Agreement, any and all payments relating to the Litigation should be made payable to Buyer and sent to the following address:

Clearwater Recovery Partners LLP
1 Gateway Center, Suite #2600
Newark, NJ 07102
United States


Attention:  Joshua Tucker
Email:    ops@clearwaterllp.com

Moreover, any and all correspondence, documents, or any other communications pertaining to the Litigation should be directed to Buyer at the above-listed address.


Dated this 13 October 2023.


**SELLER**

By: _____

       Name: George Hofmann
       Title: Trustee


**BUYER**

By: _____

       Name:  Joshua Tucker
       Title:    Partner