George Hofmann (10005)
Matthew M. Boley (8536)
Jeffrey Trousdale (14814)
Andrew W. Houlin (18284)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300

Attorneys for George Hofmann,
Chapter 7 Trustee

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re | Bankruptcy No.  22-22239 (KRA) |
| SIMPLY MAC, INC., | Chapter 7 |
| Debtor. | Honorable Kevin R. Anderson |

**TRUSTEE'S MOTION FOR ORDER APPROVING THE ASSIGNMENT AGREEMENT**

George Hofmann (the "Trustee"), in his capacity as the Chapter 7 trustee of the

bankruptcy estate of Simply Mac, Inc. (the "Debtor"), through his undersigned counsel,

moves this Court for an Order approving an assignment agreement between the

Trustee and Clearwater Recovery Partners LLP ("Clearwater Recovery"), and in support

of the motion, respectfully states as follows:

**BACKGROUND**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§

157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4863-4461-5815, v. 2

2.      The Debtor commenced this case under Chapter 7 of the Bankruptcy Code by filing a voluntary petition on June 14, 2022 (the "Petition Date") and the Trustee was duly appointed as Chapter 7 Trustee of the Debtor's estate (the "Estate").

3.      The Estate may hold, own, or have a right, title, or interest, whether legal, equitable or otherwise in or to any and all claims, causes of action, choses in action, rights to payment, rights to recovery, rights to proceeds, proofs of claim and other litigation-related rights of any nature (whether known or unknown, fixed or contingent, matured or unmatured, accrued or unaccrued, direct or derivative), in law or equity, against any third party, arising out of, relating to, or in connection with any putative, pending or resolved class, groups, mass or multi-district actions (collectively, the "Litigation Assets").

4.      Clearwater Recovery is in the business of purchasing speculative and illiquid assets and obligations in exchange for cash. In October of 2023, Clearwater Recovery purchased similar litigation rights from the Trustee related to one particular class action case pending in the United States District Court for the Eastern District of New York, but otherwise Clearwater Recovery has no other preexisting business relationship or other interest in the Debtor or the Debtor's estate.

5.      Subject to the approval of this Court, Clearwater Recovery desires to purchase from the Trustee all of the Estate's right, title and interest arising from and/or relating to the Litigation Assets and the Trustee desires to sell all of Estate's right, title and interest arising from and/or relating to the Litigation Assets.

6.     The Trustee and Clearwater Recovery have engaged in good-faith, arms-length negotiations regarding the preparation and execution of the Agreement and as to the sale of all rights, titles and interest in the Litigation Assets.

## RELIEF REQUESTED

7.     By this Motion, the Trustee respectfully requests that the Court approve the Agreement, a copy of which is attached hereto as Exhibit A, and the sale and transfer of rights, title and interest in and to the Litigation Assets, as contemplated by the Agreement.

## THE AGREEMENT

8.     The Agreement is summarized in this Motion, but to the extent of any inconsistency between this summary and the Agreement, the Agreement itself controls. Accordingly, creditors and parties-in-interest are directed to the Agreement itself for its complete terms.

9.     Under the Agreement, the Trustee has agreed to sell, transfer and assign to Clearwater Recovery all of the Estater's right, title and interest arising from and/or relating to the Litigation Assets and to the extent related thereto: (i) all rights to receive damages, penalties, fees, expenses, restitution, disgorgement, interest (pre- and post-judgment), and any other monetary recovery or distribution of any kind; (ii) all rights to receive cash, securities, instruments, or other property issued or distributed on account of the Litigation Assets; (iii) all claims, causes of action, and rights against any defendants, settlement funds, administrators, escrows, or other third parties relating to the Litigation Assets; (iv) all voting, consent, opt-in/opt-out, proof-submission, and other participatory rights associated with any Litigation Assets; and (v) all books and records

4863-4461-5815, v. 2

(including transaction and trade data, invoices, purchase orders, proofs of delivery, statements, correspondence, and other documents) to the extent pertaining to the foregoing (the "Transferred Rights").

10.    Clearwater Recovery acknowledges that all Transferred Rights are being transferred on an "as is," "where is," and "with all faults" basis. In exchange for the Trustee's transfer of the Transferred Rights, Clearwater Recovery has agreed to pay to the Trustee the total amount of five thousand dollars ($5,000.00) and has agreed to incur any and all other costs with the enforcement and exercise of their rights under any Litigation Assets and the Transferred Rights.

11.    The Agreement, by its terms, is subject to Court approval.

## DISCUSSION

### I.    The Court Should Approve the Sale

To facilitate the administration of the bankruptcy estate, 11 USC § 363(b)(1) provides that the Trustee, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…"

Section 363(b) has been applied in many situations to authorize a bankruptcy trustee to sell and otherwise use property of the estate outside of the ordinary course of business including entering into transactions requiring expenditure of estate assets. <u>See</u> 3 Collier on Bankruptcy ¶ 327.02[6][a] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

To approve the use or sale of property outside of the ordinary course of business, the Trustee must show four requirements:  "(1) that a sound business reason exists for the sale; (2) there has been adequate and reasonable notice to interested

4863-4461-5815, v. 2

parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith." In re Medical Software Solutions, 286 B.R. 431 (Bankr. D. Utah 2002); accord Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (identifying the "sound business purpose" test); In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of Lionel and adding the "good faith" requirement).

In general, bankruptcy courts often defer to a trustee's business judgment regarding the sale of estate assets, unless such decision is arbitrary and capricious. See In re Curlew Valley Assocs., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a trustee's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." Curlew Valley, 14 B.R., at 513-14 (footnotes omitted).

The Trustee has sound business reasons for entering into the proposed Agreement and the sale of the Transferred Rights. This is a Chapter 7 liquidation case, and the Trustee has a duty to "collect and reduce to money the property of the estate." Bankruptcy Code § 704(a)(1).

As to the second factor, the Trustee submits that this Motion provides ample notice to parties in interest of the proposed transaction. The terms of the Agreement have been fully disclosed.

The Trustee believes that the proposed amount to be paid under the Agreement are fair and reasonable for several reasons, including that:

4863-4461-5815, v. 2

- It is unclear if any Litigation Assets do exist or if the Estate would be entitled to any recovery therefrom.

- If the Estate is entitled to a settlement payment related to any Litigation Assets, the amount of such payment is yet undetermined.

- Even if the Estate *is* entitled to any recovery from any Litigation Assets, there is no concrete or predictable timing as to when such recovery would be paid out.

- The right to a potential payment from the Litigation Assets is of little value to anyone other than the holder of the right to make claims under for settlement payments whereas liquid assets would be of greater value to the creditors and the Estate.

- Clearwater Recovery has agreed to purchase the Transferred Rights free of any kind of representation, warranty or other assurance of any kind.

- Given all of these factors, the purchase price is fair and reasonable in the Trustee's opinion.

Moreover, the Trustee submits that the Agreement satisfies the good faith requirement set out in the Medical Software Solutions case.  See 286 B.R. at 241. The Bankruptcy Code does not define "good faith."  Courts have therefore turned to the traditional equitable definition of a "good faith purchaser"—a purchaser who buys in "good faith" and for "value."  Tomkins v. Frey (In re Bel Air Assocs., Ltd.), 706 F.2d 301, 305 (10th Cir. 1983).  In addition, certain types of misconduct, including "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take advantage of other bidders,'" will "destroy a buyer's 'good faith purchaser' status."  Id. (quoting In re Rock Indus. Machinery Corp., 573 F.2d 1195, 1197 (7th Cir. 1197).

Although <u>Tomkins</u> was a case arising under the Bankruptcy Act, it remains good law in this circuit.  <u>See</u> <u>Plotner v. AT&T Corp.</u>, 224 F.3d 1161, 1171 (10th Cir. 2000) (citing <u>Tomkins</u> with approval).

The identity and affiliates of Clearwater Recovery have been fully disclosed. <u>See</u> <u>id.</u> at 445-446 (finding that debtor acted in good faith where the debtor "disclosed all elements of the transaction, including the insider status of the proposed purchaser").

The Trustee does not believe that Clearwater Recovery has engaged in any conduct that would preclude this Court from making a "good faith" finding at the hearing to approve this proposed sale. The Court, therefore, should conclude that the Agreement meets each of the four <u>Medical Software Solutions</u> requirements.

## <u>CONCLUSION</u>

WHEREFORE, the Trustee respectfully requests that this Court enter an order approving the Agreement and the sale of the Transferred Rights pursuant to the Agreement, and granting the Trustee such other and further relief as the Court deems just and proper.

Dated: 21st day of August, 2025

**COHNE KINGHORN, PC**

/s/ Andrew W. Houlin
GEORGE B. HOFMANN
MATTHEW M. BOLEY
JEFFREY TROUSDALE
ANDREW W. HOULIN
Attorneys for Trustee

4863-4461-5815, v. 2

# EXHIBIT "A"

4863-4461-5815, v. 2

## <u>ASSIGNMENT AGREEMENT</u>

THIS ASSIGNMENT AND SALE AGREEMENT (this "<u>Agreement</u>") is entered into as of the 20th day of August 2025 (the "<u>Agreement Date</u>"), by and between Simply Mac, Inc. (IRS EIN: 20-5434047) ("<u>Simply Mac</u>") and Simply, Inc. (IRS EIN: 33-0599368) ("<u>Simply Inc</u>", and together with Simply Mac, the "<u>Debtors</u>") represented by George B. Hofmann solely in his capacity as Chapter 7 trustee (the "<u>Trustee</u>", and collectively with the Debtors, the "<u>Seller</u>") for the bankruptcy estate of each Debtor (the "<u>Estates</u>"), and Clearwater Recovery Partners LLP, as buyer ("<u>Buyer</u>"). Seller and Buyer are each a "Party" and collectively the "Parties."

### RECITALS

WHEREAS, on or about 14 June 2022, the Debtors commenced cases under chapter 7 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Utah (the "<u>Bankruptcy Court</u>"), Case Nos. 22-22239 and 22-22242 (collectively, the "<u>Chapter 7 Cases</u>"), and the Trustee was appointed to administer the Estates.

WHEREAS, each Estate may hold, own, or have a right, title, or interest, whether legal, equitable, or otherwise, in or to any and all claims, causes of action, choses in action, rights to payment, rights to recovery, rights to proceeds, proofs of claim, and other litigation-related rights of any nature (whether known or unknown, fixed or contingent, matured or unmatured, accrued or unaccrued, direct or derivative), in law or equity, against any third party, arising out of, relating to, or in connection with any putative, pending, or resolved class, group, mass, or multi-district (MDL) action (collectively, the "<u>Litigation Assets</u>");

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell, transfer, and assign to Buyer, all of each Estate's right, title, and interest in and to the Litigation Assets, on the terms and subject to the conditions set forth in this Agreement (the "<u>Transaction</u>"); and

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

### TERMS AND CONDITIONS

1.      **<u>Sale and Purchase of Transferred Rights</u>**.

        a.      <u>Sale</u>. Subject to entry of the Sale Order (as defined below), Seller hereby sells, conveys, transfers, and assigns to Buyer, and Buyer hereby purchases from Seller, all of each Seller's and each Estate's right, title, and interest in and to the Litigation Assets, together with the following (collectively, the "<u>Transferred Rights</u>"): (i) all rights to receive damages, penalties, fees, expenses, restitution, disgorgement, interest (pre- and post-judgment), and any other monetary recovery or distribution of any kind; (ii) all rights to receive cash, securities, instruments, or other property issued or distributed on account of the Litigation Assets; (iii) all claims, causes of action, and rights against any defendants, settlement funds, administrators, escrows, or other third parties relating to the Litigation Assets; (iv) all voting, consent, opt-in/opt-out, proof-submission, and other participatory rights associated with any Litigation Assets; and (v) all books and records (including transaction and trade data, invoices, purchase orders, proofs of delivery, statements, correspondence, and other documents) to the extent pertaining to the foregoing.

        b.      <u>True Sale</u>. The Parties intend the transfer contemplated by this Agreement to constitute a true, absolute, and irrevocable sale and assignment of the Transferred Rights, and not a loan, financing, or other arrangement intended as security.

        c.      <u>Non-Assignable Interests</u>. To the extent any portion of the Transferred Rights is not assignable under applicable law, Seller hereby grants to Buyer, automatically and without further action, an exclusive, irrevocable, and perpetual 100% participation interest representing the entire economic, voting, and disposition rights in such portion, and Seller shall hold any such rights in trust for Buyer.

        d.      <u>Free and Clear</u>. The Transferred Rights shall be transferred to Buyer pursuant to the Sale Order free and clear of all liens, claims, interests, and encumbrances to the maximum extent permitted by 11 U.S.C. § 363(f), with any such liens, claims, interests, and encumbrances attaching to the proceeds with the same priority and validity as existed immediately prior to the Closing.

e.      <u>Purchase Price</u>. Closing. Buyer shall pay to Seller an aggregate purchase price of Five Thousand U.S. Dollars (US$5,000) (the "<u>Purchase Price</u>") by wire transfer of immediately available funds to the account set forth on Schedule A. The closing of the Transaction (the "<u>Closing</u>") shall occur on the second (2nd) Business Day after the Sale Order becomes a Final Order (or on such other date the Parties may agree in writing). For purposes of this Agreement, "<u>Business Day</u>" means any day other than a Saturday, Sunday, or a day on which banks in New York, New York or Salt Lake City, Utah are authorized by law to close.

2.      **Conditions Precedent to Closing**.  Buyer's obligation to consummate the Closing and pay the Purchase Price is conditioned upon satisfaction (or written waiver by Buyer) of the following: (a) the Bankruptcy Court shall have entered a final, non-appealable order (the "<u>Sale Order</u>") approving this Agreement and the sale, transfer, and assignment of the Transferred Rights to Buyer pursuant to 11 U.S.C. §§ 105(a) and 363(b) and (f), finding Buyer to be a good-faith purchaser under 11 U.S.C. § 363(m), and waiving the 14-day stay under Fed. R. Bankr. P. 6004(h); (b) Seller shall have delivered to Buyer a duly executed counterpart of this Agreement and any reasonably requested transfer documents or claim forms to effectuate recognition of Buyer's ownership; and (c) the representations and warranties of Seller set forth in Section 6 shall be true and correct in all material respects as of the Closing.

3.      **"As Is, Where Is; No Reliance"**.  Buyer acknowledges and agrees that the Transferred Rights are being sold, assigned, and transferred on an "AS IS," "WHERE IS," and "WITH ALL FAULTS" basis. Seller makes no representation or warranty, express or implied, at law or in equity, including with respect to title, validity, assignability, existence, amount, collectability, priority, defenses, setoff, counterclaims, or the outcome of any Litigation Assets. Buyer acknowledges that it has conducted its own independent investigation and is not relying on any statement or omission of Seller, the Estates, or their respective professionals.

4.      **Limited Power of Attorney; Further Assurances.**

a.      <u>Power of Attorney</u>. Effective as of the Closing, Seller hereby irrevocably constitutes and appoints Buyer (and its designees) as Seller's true and lawful attorney-in-fact, solely with respect to the Transferred Rights, with full power and authority, in Seller's or the Estates' name or otherwise, to (i) submit claims, proofs, forms, and documentation; (ii) receive, endorse, and deposit any distributions or payments; (iii) communicate with courts, settlement administrators, and counsel; and (iv) take any other actions reasonably necessary to evidence, enforce, or collect the Transferred Rights;

b.      <u>No Obligation to Prosecute</u>. Buyer shall have no obligation to take any action to prosecute or defend any Litigation Assets. Buyer shall not commence any action that would require Seller or the Estates to participate in litigation without Seller's prior written consent, except for ministerial filings or appearances required to recognize Buyer's ownership;

c.      <u>Cooperation; Expenses</u>. Seller shall, at Buyer's reasonable request and at Buyer's sole expense, execute and deliver such further instruments and take such further actions as may be reasonably necessary to effectuate the transfer and to cause recognition of Buyer as owner of the Transferred Rights. Seller shall not be required to expend any Estate funds other than minimal administrative time consistent with the Trustee's duties; and

d.      <u>Non-Assignable Context</u>. If any tribunal or administrator declines to recognize Buyer's standing, Seller agrees, upon Buyer's written request and at Buyer's sole expense, to file or submit necessary documents in Seller's name for Buyer's benefit.

5.      **Distributions**.  If Seller or the Estates receive any payment or distribution on account of the Transferred Rights after the Agreement Date, Seller shall (a) hold such amounts in trust for Buyer, (b) notify Buyer within five (5) Business Days of receipt, and (c) remit such amounts to Buyer within three (3) Business Days after delivering such notice contemplated in 5(b), by wire transfer in accordance with Buyer's written instructions, together with any necessary endorsements or transfer documentation.

6.      **Notices**. All notices and other communications hereunder shall be in writing and shall be deemed given when: (a) delivered by hand, (b) received by a nationally recognized overnight courier, or (c) transmitted by email (with confirmation of transmission), in each case to the addresses set forth on <u>Schedule A</u> (or to such other address as a Party may designate by notice).

7.      **Survival and Transferability**.  All covenants and agreements herein survive the Closing. Buyer may assign, sell, transfer, or participate the Transferred Rights (in whole or in part) and may assign its rights under this Agreement without Seller's consent; provided that Buyer shall provide fifteen (15) days' advance  written notice to Seller. Seller may not assign this Agreement without Buyer's prior written consent, other than by operation of law.

- 2 -

4926-8557-5519, v. 2

8.  **Confidentiality**.  The Parties shall keep the terms of this Agreement confidential, except that disclosure may be made (a) to affiliates and their respective officers, directors, employees, advisors, and agents, (b) to the Bankruptcy Court and the United States Trustee as necessary to obtain the Sale Order, (c) as required by law, regulation, or legal process, or (d) to actual or potential financing sources, participants, or assignees of Buyer (excluding disclosure of the Purchase Price unless required by the Bankruptcy Court). To the extent practicable, the Parties shall seek to file under seal any motion or paper disclosing sensitive commercial terms.

9.  **Governing Law; Venue and Waiver of Jury Trial**.  This Agreement and any dispute, claim, or controversy arising out of or relating hereto shall be governed by the laws of the State of Utah, without giving effect to principles of conflicts of law. The Bankruptcy Court shall have exclusive jurisdiction to hear and determine any dispute arising out of or related to this Agreement; provided that if the Bankruptcy Court declines to exercise jurisdiction, the United States District Court for the District of Utah shall have exclusive jurisdiction. EACH PARTY WAIVES ANY RIGHT TO A TRIAL BY JURY TO THE MAXIMUM EXTENT PERMITTED BY LAW.

10.  **Miscellaneous**.

a.  Interpretation. The words "include," "includes," and "including" shall be deemed to be followed by "without limitation." Headings are for convenience only and shall not affect interpretation.

b.  Entire Agreement; Amendments. This Agreement (including the schedules) constitutes the entire agreement and may be amended only by a written instrument executed by both Parties.

c.  Severability. If any provision is held invalid, the remainder shall not be affected.

d.  Expenses. Each Party shall bear its own expenses.

e.  Counterparts; Electronic Signatures. This Agreement may be executed in counterparts (including by .pdf or electronic signature), each of which is deemed an original.

[*Signature to follow on next page*]

- 3 -

4926-8557-5519, v. 2

**IN WITNESS WHEREOF,** this Assignment Agreement has been executed by the Parties as of the date and year provided above.

SELLER

By: _____

        Name: George Hofmann
        Title: Trustee

BUYER

By: _____

        Name: Joshua Tucker
        Title: Partner

**Schedule A**

Purchase Price (payable by Buyer to Debtor):     $5,000

**Debtor's Address for Notices and Delivery:**

Cohne Kinghorn, PC
111 East Broadway, 11th Floor
Salt Lake City, UT 84111

Attention: George Hofmann, Trustee
Email: ghofmann@ck.law

---

**Buyer's Address for Notices and Delivery:**

PO Box 841951
Boston
MA 02284-1951
United States

Attention:  Joshua Tucker
Email:      ops@clearwaterllp.com

---

- 5 -

4926-8557-5519, v. 2